**Case No. 22-30564**

---

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Randy Boudreaux,

Plaintiff – Appellant

v.

Louisiana State Bar Association, a Louisiana Nonprofit Corporation; Louisiana Supreme Court; Bernette J. Johnson, Chief Justice of the Louisiana Supreme Court; Scott J. Crichton, Associate Justice of the Louisiana Supreme Court for the Second District; James T. Genovese, Associate Justice of the Louisiana Supreme Court for the Third District; Marcus R. Clark, Associate Justice of the Louisiana Supreme Court for the Fourth District; Jefferson D. Hughes, III, Associate Justice of the Louisiana Supreme Court for the Fifth District; John L. Weimer, Associate Justice of the Louisiana Supreme Court for the Sixth District; Unidentified Party, successor to the Honorable Greg Guidry as Associate Justice of the Louisiana Supreme Court for the First District,

Defendants – Appellees

---

Appeal from the United States District Court for the Eastern District of Louisiana
Case No. 2:19-cv-11962, Hon. Lance M. Africk, presiding

---

# APPELLANT'S REPLY BRIEF

---

Scott Day Freeman
Timothy Sandefur
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
500 E. Coronado Rd.
Phoenix, AZ 85004
(602) 462-5000
litigation@goldwaterinstitute.org

James Baehr
Sarah Harbison
**Pelican Center for Justice**
**PELICAN INSTITUTE FOR PUBLIC POLICY**
400 Poydras St., Ste. 900
New Orleans, LA 70130
(504) 500-0506
james@pelicaninstitute.org
sarah@pelicaninstitute.org

Dane S. Ciolino
**DANE S. CIOLINO, LLC**
18 Farnham Place
Metairie, LA 70005
(504) 975-3263
dane@daneciolino.com

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

SUMMARY OF THE ARGUMENT .................................................... 1

ARGUMENT ........................................................................................ 1

I.  *Janus* limits the "reach" of *Lathrop* and *Keller*............................................. 1

    a.  This Court recognized that *Janus* limits the "reach" of *Lathrop* and *Keller*................................................................................. 1

    b.  *Lathrop* and *Keller* set out a rigorous standard for germaneness. .......... 3

    c.  The LSBA has failed to meet the germaneness standard required in their legislative positions, policy pronouncements, and online communications. ................................................................. 5

    d.  This Court held that lawyers may not be constitutionally mandated to join a bar association that engages in non-germane activities, however small. ................................................................. 8

II.  Challenges to the LSBA's legislative activity are not moot because the LSBA continues to support advocacy for changes to the state's substantive law, and any modifications made by the LSBA were through voluntary cessation................................................................. 10

III.  The LSBA's opt-out procedures are inadequate under *Hudson* .................. 12

    a.  In light of *Janus*, this Court adopted *Hudson* as the "constitutional floor" for opt-out procedures. ........................................................... 12

    b.  The LSBA's opt-out procedures fail *Hudson*'s notice provision. ........ 13

CONCLUSION ................................................................................. 17

CERTIFICATE OF SERVICE ........................................................... 18

i

CERTIFICATE OF COMPLIANCE ........................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977) ........................................... 3, 5

*Advanced Env't Recycling Tech. Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 399 Fed. Appx. 869 (5th Cir. 2010) ........................................................... 16

*Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748 (5th Cir. 2021) ........................ 2, 12

*Dambrot v. Cent. Mich. Univ.* 55 F.3d 1177 (6th Cir. 1995) ............................... 12

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) .................................. 8

*Env't Conservation Org. v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008) ............ 11

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) .................................. 11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...................................................................................................... 10,,1 1

*Harris v. Quinn*, 573 U.S. 616 (2014) ................................................................. 3, 4

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) .................................................. passim

*Johanns v. Livestock Marketing Association*, 544 U.S. 550 (2005) ................... 4, 5

*Keller v. State Bar of Cal.,* 496 U.S. 1 (1990) ................................................ passim

*Knox v. SEIU*, 567 U.S. 298 (2012) .................................................................. 9, 10

*Lathrop v. Donohue*, 367 U.S. 820 (1961) .................................................. 2, 3, 7, 8

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) ...................... 7

*McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021) ....................................... passim

*Schneider v. Colegio de Abogados de P.R.*, 917 F.2d 620 (1st Cir. 1990) ............ 15

*United States v. Stevens*, 559 U.S. 460 (2010) ............................................. 11, 12

**Statutes**

42 U.S.C. § 1983 ................................................... 16

**Other Authorities**

2021 Louisiana State Bar Association Annual Report" (Aug. 25, 2022).............. 14

Appellee Br., *McDonald v. Longley,* No. 20-50448, 2020 WL 4436953 (5th Cir., July 30, 2020) .................................................... 8

Louisiana State Bar Association, "2022–2023 Approved Budget Expenditures" (May 5, 2022) .................................................... 14

Thomas Jefferson, A Bill for Establishing Religious Freedom, *in* 2 *Papers of Thomas Jefferson* (J. Boyd ed., 1950) ................................. 1

**Rules**

Oklahoma Supreme Court Rule XVIII § 6 ............................ 6

## SUMMARY OF THE ARGUMENT

Our Founders understood all too well that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhors is sinful and tyrannical." *Janus v. AFSCME*, 138 S. Ct. 2448, 2448 (2018) (quoting Thomas Jefferson, A Bill for Establishing Religious Freedom, *in* 2 *Papers of Thomas Jefferson* 545 (J. Boyd ed., 1950)). Yet, LSBA continues to commit that sin: compelling Mr. Boudreaux to pay annually to associate with it and to allow it to speak in his name on political and ideological matters. That is unconstitutional.

Mr. Boudreaux's challenge to LSBA's comprehensive legislative advocacy is not moot because LSBA has indicated a continued desire to engage in non-germane advocacy and speech through policy pronouncements and online communications and its abandonment of some speech was merely through voluntary cessation. Finally, LSBA's opt-out procedures do not meet constitutional requirements in the wake of *Janus*.

## ARGUMENT

**I.    *Janus* limits the "reach" of *Lathrop* and *Keller*.**

**a.    This Court recognized that *Janus* limits the "reach" of *Lathrop* and *Keller*.**

Defendants mistakenly dismiss the lasting impact of *Janus* on this Court's review of Mr. Boudreaux's constitutional rights. Appellee's Br. at 16 ("Plaintiff

erroneously assumes that *McDonald* tacitly adopted principles from *Janus*, notwithstanding the Court's express statement to the contrary."). Quite the opposite: it is Defendants who plainly misconstrue the Court's express statements regarding *Janus* and its importance.

In its previous ruling, this Court noted that "[i]n determining which safeguards are constitutionally adequate, we are mindful of the Supreme Court's protective holdings in the union context. Requiring anything less … in the bar context would be *inconsistent* with the Supreme Court's *protective trend*." *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 759 (5th Cir. 2021) (emphasis added). Likewise, in *McDonald*, this Court noted that "*Janus*, in particular, cast doubt on *Lathrop* and *Keller*," which rely on "'increasingly wobbly, moth-eaten foundations.'" *McDonald v. Longley*, 4 F.4th 229, 243 n.14 (5th Cir. 2021) (citing *Lathrop v. Donohue*, 367 U.S. 820 (1961) and *Keller v. State Bar of Cal.,* 496 U.S. 1 (1990)). While the Supreme Court has not yet explicitly overruled *Lathrop* or *Keller*, this Court emphasized that their "foundations" are "weakened," which "counsels against *expanding their application*," *Boudreaux*, 3 F.4th at 755 (emphasis added).

In fact, this Court explicitly adopted the dissent from *Crowe* which held that, because of *Janus*, *Hudson* procedures are the "constitutional floor" for opt-out procedures. *Id.* at 758. Taken together, *McDonald* and *Boudreaux* recognize that

*Janus*'s principles must guide the Court's interpretation of *Lathrop* and *Keller*—to align with the "protective trend" in favor of the constitutional rights of free association and free speech. *Id.* at 759.

**b.    *Lathrop* and *Keller* set out a rigorous standard for germaneness.**

*Lathrop*[1] held that a bar's legislative activity was acceptable when it was "not the major activity of the State Bar, and, furthermore, it was limited to bills pertinent to the legal profession for which there was substantial unanimity." *McDonald*, 4 F.4th at 244 (citing *Lathrop*, 367 U.S. at 834–39) (cleaned up). To meet constitutional muster, then, a bar's legislative activity or communication must: 1) not be a "major activity," 2) be "limited" and "pertinent to the legal profession," and 3) have "substantial unanimity" on the matter. *Id.* (citation omitted).

*Keller* clarified some of these terms. It prohibited a state from compelling funding of activities that are 1) non-germane and 2) "of an ideological nature." *Keller*, 496 U.S. at 14. It identified only two things as "germane": regulating the

---

[1] While *Lathrop* is controlling law, it's worth emphasizing (as the Supreme Court did in *Harris v. Quinn*, 573 U.S. 616, 630–31 (2014), and *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977), that *Lathrop* was a splintered decision that "does not provide a clear holding" on the "constitutional questions" regarding integrated bars that engage in political activities. *Id.* at 233 n.29. Indeed, Justice Black in dissent wrote that he "[did not] know what has been decided" in *Lathrop*, 367 U.S. at 865 (Black, J., dissenting).

legal profession and improving the quality of the legal services. *Id.* And it distinguished between these and "activities of an ideological nature which fall outside those areas of activity." *Id.* The Court reiterated: on one hand are "activities in which the officials and members of the Bar are acting essentially as professional advisors to those ultimately charged with the regulation of the legal profession," and on the other are "those activities having *political or ideological* coloration which are not reasonably related to the advancement of such goals." *Id.* at 15 (emphasis added).

In *Harris*, the Court reemphasized the meaning of *Keller*, explaining that it "held that members of this bar could not be required to pay the portion of bar dues used for *political or ideological purposes* but that they could be required to pay the portion of the dues used for activities connected with proposing ethical codes and disciplining bar members." 573 U.S. at 655 (emphasis added).

*Harris* was the Supreme Court's binding last word on the meaning of *Keller*, and it eliminates any doubt that even under *Keller*'s "germaneness" framework, objectors cannot be compelled to support activities of a "political or ideological" nature.

In *Johanns v. Livestock Marketing Association*, 544 U.S. 550 (2005), the Supreme Court again explained that *Keller* had "invalidated the use of the compulsory fees to fund speech on *political matters*," and held that "Bar or union

speech with such content … was not germane to the regulatory interests that justified compelled membership." *Id.* at 558 (emphasis added). *Keller* also held, according to *Johanns*, that "making those who disagreed with [that speech] pay for it violated the First Amendment." *Id.* at 558.

In *Janus*, the Court made clear that even under the *Abood* precedent that undergirds *Keller*, an organization that receives coerced dues is "flatly prohibited" from using such fees for speech that "concerns political or ideological issues." *Janus*, 138 S. Ct. at 2473.

If that wasn't enough, this Court elaborated on the nature of the *Keller* germaneness inquiry by finding that "advocating changes to a state's substantive law … is non-germane to the purposes [of a bar association] identified in *Keller*." *McDonald,* 4 F.4th at 247. The critical question is whether the advocacy is "for laws governing the activities of lawyers *qua* lawyers," or "directed entirely at changing the law *governing* cases, disputes, or transactions *in which attorneys might be involved*." *Id.* at 248 (emphasis in original). The latter is categorically non-germane.

> ### c.  The LSBA has failed to meet the germaneness standard required in their legislative positions, policy pronouncements, and online communications.

LSBA's legislative activity, past and present, fails to meet these rigorous standards. Plaintiff has comprehensively outlined an array of legislative speech and

5

activity that LSBA engaged in until very recently. Appellant's Br. at 5–9. Defendants have been forced to stop *some* of this activity in light of this Court's decisions, but they have not renounced any of these activities as non-germane. They have instead ceased some of them—for now.

But in reality, LSBA continues to support advocating changes to the state's substantive law in contravention of this Court's rulings. Its Bar Governance Committee issued several important public policy pronouncements *after* the recent amendment to Supreme Court Rule XVIII § 6, including on issues such as taxation of legal services, support of initiatives to assist low-income individuals with "access to justice," compensation of the judiciary, unauthorized practice of law, and diversity. ROA.807 n.5.

The issue of taxation of legal services—which inevitably affects all taxpayers in the state as other taxes are raised or government services cut to provide lawyers a financial benefit—is not about the activities of lawyers *qua* lawyers; it is a broader substantive policy issue about laws "governing … transactions." Accordingly, the LSBA has no business spending Mr. Boudreaux's money to advocate for or against in his name. ROA.1125:14–1126:17.

LSBA also continues to seek to engage politically on the issue of "diversity," a euphemism often employed to refer to an enormous swathe of highly contentious legislative issues. The Supreme Court has taken an increasingly dim

view of the "sordid business" of "divvying us up by race." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, J., concurring in part and dissenting in part). Yet LSBA advocates it and wishes to increase it. Whether or not that is a good idea, it is unconstitutional to force Mr. Boudreaux to be a part of that debate or to compel him to subsidize views with which he disagrees.

*McDonald* made clear that "there are limits" to germaneness:

> Certain ideologically charged activities might be so tenuously related to the legal profession that any argument they are germane would be pre-textual. In holding that the diversity initiatives are germane, we do not give the Bar *carte blanche* to engage in any ideological activities so long as they have some sophistic argument the activities are germane. We just identify that the diversity initiatives are not so tenuously connected to the purposes identified in *Keller*, and that therefore their ideologically charged nature does not defeat their germaneness.

4 F.4th at 249 n.28. LSBA's policy pronouncements provide no explicit limits on their legislative advocacy in this arena, and Mr. Boudreaux is both forced to associate with, and pay for, all of it.  ROA.1155:6–1157:12.[2]

Likewise, LSBA's continuing online communications fail to meet the *Lathrop* and *Keller* germaneness standard. LSBA's ability to come up with "some sophistic argument [that] the activities are germane" does not alter the fact that

---

[2] See also ROA 1126:20-1127:25 for Plaintiff's testimony opposing the LSBA's policy position related to the unauthorized practice of law.

they are "tenuously connected to the purposes identified in *Keller*" and fail the First Amendment test. *McDonald*, 4 F.4th at 249 n.28. To hold otherwise gives LSBA "carte blanche" to compel speech in violation of Mr. Boudreaux's rights.

Contrary to Defendants' argument, this Court already recognizes that *Lathrop* imposes more than a simple "major activity" standard. Appellee's Br. at 27. If it didn't, the *McDonald* decision would have excused all of the Texas Bar's prior legislative activity under a *de minimis* exception. Indeed, the Texas Bar argued to this Court that "[l]egislative activities constitute a miniscule portion of the Bar's operations" constituting "just 0.34% of the Bar's proposed budget." Appellee Br., *McDonald v. Longley,* No. 20-50448, 2020 WL 4436953 at *22 (5th Cir., July 30, 2020). This Court rejected that argument then and should reject it again now: even arguably "miniscule" activity can violate the First Amendment. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 36–37 (2004) (O'Connor, J., concurring) ("There are no *de minimis* violations of the Constitution—no constitutional harms so slight that the courts are obliged to ignore them.").

### d.     This Court held that lawyers may not be constitutionally mandated to join a bar association that engages in non-germane activities, however small.

Contrary to Defendant's arguments that Mr. Boudreaux's injuries amount to mere "annoyance[s]," Appellee Br. at 22, this Court rightly concluded that compelling an individual to associate with a bar that engages in non-germane

activities, however small, constitutes real constitutional injury. *McDonald*, 4 F.4th at 246–47 ("Compelled membership in a bar association that engages in non-germane activities, on the other hand, fails exacting scrutiny. … Therefore, the plaintiffs are entitled to summary judgment on their freedom-of-association claim if the Bar is in fact engaged in non-germane activities.")

The district court's conclusion that the "practical effect" of this Court's ruling "will be that mandatory bar associations will eventually be rendered extinct" is both false and insufficiently focused on Mr. Boudreaux's constitutional rights. ROA.1061. A state may constitutionally compel lawyers to submit to a system which "regulat[es] the legal profession and improv[es] the quality of legal services." *Keller*, 496 U.S. at 13. But it cannot require them to associate with organizations or subsidize speech they disagree with.

The alternative is continued constitutional violations of compelled association and compelled speech—philosophical injuries of conscience. *Knox v. SEIU*, 567 U.S. 298, 321 (2012) (recognizing the "extraordinary" power conferred on an entity that can compel individuals "to pay for services that they may not want and in any event have not agreed to fund."). The First Amendment requires courts to place the risk of any uncertainty on "the side whose constitutional rights are not at stake." *Id.* The call is not close: the First Amendment protects Mr.

Boudreaux from infringement on his liberty—but *Knox* made clear that LSBA has "no constitutional right to receive any payment" from him. *Id.*

Anyway, as *McDonald* recognized, almost half the states have no mandatory bar associations, and they're perfectly capable of effectively regulating the practice of law. 4 F.4th at 246–247 ("The Bar cannot reasonably suggest that those states are unable to regulate their legal professions adequately."). There is no reason to believe that the State of Louisiana cannot regulate the legal profession effectively without forcing Mr. Boudreaux to join an organization that insists on forcing him to subsidize its non-germane political advocacy.

## II.    Challenges to the LSBA's legislative activity are not moot because the LSBA continues to support advocacy for changes to the state's substantive law, and any modifications made by the LSBA were through voluntary cessation.

It is well established that a defendant's voluntary cessation of unconstitutional activities does not moot a plaintiff's challenge of those activities. *Knox*, 567 U.S. at 307 ("voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

In fact, such a mootness argument is extremely disfavored. LSBA "bears the *formidable* burden of showing that it is *absolutely* clear the allegedly wrongful behavior *could not reasonably* be expected to recur." *Friends of the Earth, Inc. v.*

*Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (emphasis added).

LSBA cannot meet this "stringent standard," *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008), because it has indicated a desire to advocate on non-germane political and ideological issues by maintaining policy pronouncements that touch on political and ideological issues—and to do so with money taken from Mr. Boudreaux against his will. While on their best behavior during the pendency of this case, there are no assurances of their future conduct absent a firm ruling from this Court on their past practices.

Next legislative session is a fiscal session in the State of Louisiana. Should a bill be put forward that alters the taxation of lawyers' services, LSBA has already indicated its interest in taking a side. Should this Court determine that this matter is moot without addressing the fundamental issues at stake, there would be nothing stopping the LSBA from doing so.

Defendants' self-interested assurances that they will follow the law going forward and only engage in germane speech does not concede the unconstitutionality of their past actions and falls far short of the "formidable burden" required of them. *Friends of the Earth*, 528 U.S. at 190. In *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 255 (2012), for example, the FCC's "assurance" that it would not consider prior broadcasts in a future licensing proceeding was "insufficient to remedy the constitutional violation," and in *United*

*States v. Stevens*, 559 U.S. 460, 480 (2010), the Court said it would not "uphold an unconstitutional [policy] merely because the Government promised to use it responsibly." *See also Dambrot v. Cent. Mich. Univ.* 55 F.3d 1177, 1183 (6th Cir. 1995) (language in University's harassment policy stating that it would not "interfere impermissibly with individuals['] rights to free speech" insufficient to defeat First Amendment claim). This Court can give little weight to LSBA's promises to do better this time, particularly because LSBA sees nothing wrong with what it did before.

## III.    The LSBA's opt-out procedures are inadequate under *Hudson*.

### a.    In light of *Janus*, this Court adopted *Hudson* as the "constitutional floor" for opt-out procedures.

In its last examination of this case, this Court said that, in light of *Janus*, a bar association must implement the procedural safeguards adopted in *Hudson* at a minimum, to protect a dissenting member's right to contest non-germane activity. *Boudreaux*, 3 F.4th at 758 ("we are persuaded that *Hudson* is the constitutional floor."). Those safeguards require: "'an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute

while such challenges are pending.'" *Id.* at 754 (quoting *Hudson*, 475 U.S. at 310).[3] But LSBA's opt-out process falls short of this standard.

### b.    The LSBA's opt-out procedures fail *Hudson*'s notice provision.

The LSBA's post-*McDonald* opt-out procedures are inadequate to satisfy *Hudson*'s notice requirement. Much like the procedures *McDonald* found wanting, "[t]he [LSBA] does not furnish [Mr. Boudreaux] with meaningful notice regarding how [his] dues will be spent. Nor does it provide [him] with any breakdown of where [his] fees go. Instead, it *places the onus on [him]* to parse the Bar's proposed budget … to determine which activities might be objectionable." *McDonald*, 4 F.4th at 254 (emphasis added). The same is true here—and as the district court recognized, the situation is even worse as far as online communications are concerned: Mr. Boudreaux must take "affirmative steps to actively monitor" communications on the LSBA "websites in order to stay apprised of LSBA's activities." ROA.1071.

The district court noted that LSBA "publishes audited annual reports each year" and published "draft budget expenditures." ROA.1043. However, the last published audited annual report available online was from 2021—and it noted over

---

[3] Mr. Boudreaux contends that *Hudson*, read in light of *Janus*, requires an opt-in rather than an opt-out for funds that will be spent on political and ideological activities. He raises it here to preserve this issue for appeal.

$80,000 spent on "Governmental Relations"—with no more specific wording than that. This included $48,000 for what the report simply labels "Lobbying." Louisiana State Bar Association, "2021 Louisiana State Bar Association Annual Report" (Aug. 25, 2022).[4] That's it. The report offers no clarification or specification as to what issues these lobbying fees were spent for, or their relationship to either regulating the practice of law or improving the quality of legal services.

The draft budget expenditures from 2022–23 are likewise too broadly categorized to be of any help. They show that in 2021–22, LSBA spent $24,000 on Lobbying out of $35,575 spent on "Governmental Relations." Louisiana State Bar Association, "2022–2023 Approved Budget Expenditures" (May 5, 2022).[5] Again, no greater clarification is provided as to which issues the LSBA lobbied on or their connection to the practice of law. And while this expenditure category falls to zero (presumably after *McDonald*), other broad categories make parsing out potentially non-germane activities impossible. "Member Outreach and Diversity," for example, constitutes over $460,000 of expenditures or 5.91% of the total budget without much greater clarity on the programs, proposals, or communications being

---

[4] https://www.lsba.org/documents/publications/annualreports/2021AnnualReport.pdf
[5] https://www.lsba.org/documents/BOG/2223BudgetLetter.pdf.

financed or how they accord with *McDonald*'s warning about "diversity" efforts. *Id.* at ep.3.[6] Nine percent is spent on "Access to Justice," whatever that means. *Id.* at ep.4. Notably, ***none*** of the LSBA's nearly $7.8 million annual budget is slated to be spent on the core functions of admitting and disciplining attorneys in the practice of law (because those functions are performed by the Louisiana Supreme Court). In a sense, then, *everything* LSBA does is *lagniappe*.

It is unconstitutional to put the burden on Mr. Boudreaux to seek out constitutionally objectional expenditures. *McDonald*, 4 F.4th at 254 n.46 ("the system for processing objections was constitutionally insufficient under *Keller* where, most relevantly, objecting attorneys had to lodge objections to specific activities in order to receive a refund.")

In *Schneider v. Colegio de Abogados de P.R.*, 917 F.2d 620, 635 (1st Cir. 1990), the First Circuit said that "a primary feature of a constitutional system" is that it provides dissenters a way to object to unconstitutional expenditures *without* forcing them to "make public their views on specific issues" or "to explain the basis for particular objections," because putting that burden on them inherently chills speech and, in effect, presumes in favor of the waiver of constitutional rights. Here, LSBA entirely flouts these principles. Its broad, undetailed list of

---

[6] "ep." refers to the electronic page number.

expenditures—and the lack of information about LSBA's online activity—effectively forces Mr. Boudreaux to seek out additional information on expenditures and identify with specificity those which are political or ideological and non-germane.[7]

LSBA contends that they engage in no non-germane activity and thus, there is nothing to notify. They argued before that all the activity they engaged in—including the same activity that the Texas Bar engaged in before *McDonald* declared it unconstitutional—was germane. Thus, their assertions regarding what expenditures were or are germane carries little weight: Mr. Boudreaux must be informed in sufficient detail of the nature of the expenditures being made in his name so that he can challenge them as non-germane.[8]

---

[7] LSBA's argument that Mr. Boudreaux hasn't used it's opt-out procedures is irrelevant: there is no exhaustion requirement under 42 U.S.C. § 1983. Mr. Boudreaux is under no obligation to follow the LSBA's burdensome and inadequate opt-out procedures in order to challenge this system as unconstitutional.

[8] In their Answering Brief, the LSBA attempts to preserve issues related to Mr. Boudreaux's personal disagreement with the Bar engaging in any non-germane activity (Appellees' Br. At 22 n.61) and this Court's prior determination in *Boudreaux I* that the Tax Injunction Act does not apply (*id.* at 36 n.91). To the extent Appellees are permitted to preserve issues for a subsequent appeal, Mr. Boudreaux likewise preserves his counterarguments. *See Advanced Env't Recycling Tech. Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 399 Fed. Appx. 869, 872 (5th Cir. 2010) (requiring the party to set forth reasons, citations to authority and parts of the record to preserve an issue for appeal).

## CONCLUSION

The district court's Findings of Fact and Conclusions of Law do not support the judgment entered against Appellant. Nor do they support a denial of Appellant's motion for preliminary injunction. This Court should vacate the district court's judgment against Appellant, render a preliminary injunction preventing the enforcement of Louisiana's rules requiring Appellant to join and pay dues to the LSBA, and remand to the district court for further proceedings necessary to render other relief Appellant requested.

Respectfully submitted this 16th day of February 2023 by:

/s/ *James Baehr*
James Baehr
Sarah Harbison
**Pelican Center for Justice**
**PELICAN CENTER FOR**
**PUBLIC POLICY**

/s/ *Scott Day Freeman*
Scott Day Freeman
Timothy Sandefur
**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**

Dane S. Ciolino
**DANE S. CIOLINO, LLC**

*Attorneys for Plaintiff-Appellant*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2023, the foregoing brief was filed and served on all counsel of record via the ECF System.


s/ *Scott Day Freeman*
Scott Day Freeman

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 3,746 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

s/ *Scott Day Freeman*

Dated: February 16, 2023                  Scott Day Freeman